1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA RODRIGUEZ, | CASE NO. 05cv1455 WQH(POR) |
| Plaintiff, | **ORDER** |
| vs. | |
| JO ANNE B. BARNHART, | |
| Defendant. | |

HAYES, Judge,

The matter before the court is the review of the Report and Recommendation (Doc. # 21) issued by United States Magistrate Judge Louisa S. Porter, recommending that Plaintiff's Motion for Reversal and/or Remand (Doc. # 12) should be denied and Defendant's Cross-Motion for Summary Judgment (Doc. # 14) should be granted.

## BACKGROUND

On November 19, 2001, Plaintiff Dina Rodriguez filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") payments under Title XVI of the Act. (Administrative Record ("A.R.") at 15.) The applications were denied initially and on reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared and testified at the hearing, which occurred on June 27, 2003. On September 8, 2004, the ALJ issued his written decision denying Plaintiff's applications. After the Appeals Council denied review, the ALJ's decision became the final determination of the

Commissioner of the Social Security Administration ("Commissioner").

On July 21, 2005, Plaintiff initiated this action, pursuant to Section 405(g) of the Act, seeking judicial review of the final decision of the Commissioner. (Doc. # 1.) On August 3, 2005, this Court referred the matter to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (Doc. # 4.)

On June 7, 2006, Plaintiff filed her Motion for Reversal and/or Remand, asserting that the ALJ erred in the following ways: (1) by disregarding the opinion, diagnosis and mental residual functional capacity assessment of Dr. Strobl; (2) by inadequately weighing the treating physicians' opinions; and (3) by relying upon information from a medical textbook. (Doc. # 12.) On July 25, 2006, Defendant filed a Cross-Motion for Summary Judgment, arguing that the ALJ's decision is supported by substantial evidence and free of legal error. (Doc. # 14.)

On February 5, 2007, the Magistrate Judge issued a Report and Recommendation recommending that Plaintiff's Motion for Reversal and/or Remand should be denied and Defendant's Cross-Motion for Summary Judgment should be granted. (Doc. # 21.) On February 20, 2007, Plaintiff filed her Objections to Report and Recommendation ("Objections"). (Doc. # 22.) Defendant did not file a response.

The duties of the district court in connection with the Report and Recommendation of a Magistrate Judge are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b). The district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b).

## RULING OF THE COURT

After *de novo* review of all findings of fact and conclusions of law, the Court adopts the Report and Recommendation in its entirety. The Court supplements the Report and Recommendation as follows.

Plaintiff objects that the Report and Recommendation fails to mention that Plaintiff filed an application for DIB in addition to her application for SSI payments. (Objections at 1-2.) Plaintiff is correct: she also applied for DIB. (A.R. at 15.) However, Plaintiff does not

contend, and the Court does not find, that this omission alters the analysis of her claim.

Plaintiff next makes a series of objections related to the ALJ's treatment of the evidence provided by Dr. Donald L. Strobl. (Objections at 2-6.) First, Plaintiff objects to the Magistrate Judge's statement that the ALJ "adopted [Dr. Strobl's] diagnosis." (Report and Recommendation at 20.) Based upon Dr. Strobl's evidence, the ALJ found that Plaintiff suffered from "pain disorder associated with both psychological factors and a general medical condition." (A.R. at 36.) On June 3, 2003, Dr. Strobl wrote on a Mental Residual Functional Capacity Assessment form: "Diagnosis: PTSD 307.89." (A.R. at 248.) On the same day, Dr. Strobl wrote in his records: "Diagnosis (DSM-IV): Axis I: 307.89." (A.R. at 291.) "Diagnosis Code 307.89" in the "DSM-IV" is listed as "pain disorder associated with both psychological factors and a general medical condition." Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Diagnosis Code 307.89 (1994). Plaintiff argues that the ALJ erred by not characterizing Dr. Strobl's diagnosis as "PTSD," or "post-traumatic stress disorder." Plaintiff asserts: "Dr. Strobl's diagnosis of post traumatic stress disorder is quite different from the ALJ's diagnosis of 'pain disorder associated with both psychological factors and a general medical condition.'" (Objections at 3.) Contrary to Plaintiff's assertion, there is nothing in Dr. Strobl's records to show that he viewed "PTSD" as "quite different" from "Diagnosis Code 307.89" in the DSM-IV. Indeed, in Dr. Strobl's own records related to Plaintiff, he makes no mention of post-traumatic stress disorder, or "PTSD," and instead simply writes Plaintiff's "Diagnosis" as "307.89." (A.R. at 291; *see generally* A.R. at 286-92.)

Plaintiff further objects to the ALJ's characterization of Dr. Strobl as an "examining physician"[1] (A.R. at 29), and to the Magistrate Judge's statement that "the ALJ did not reject Dr. Strobl's diagnosis, but rather he granted moderate weight to his opinion" (Report and

---

[1] The Ninth Circuit distinguishes among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is entitled to greater weight than the opinion of non-treating physicians because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations omitted). "Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Id.*

1   Recommendation at 20).  However, even if the Court were to find that Dr. Strobl was

2   Plaintiff's treating physician, and even if the Court were to agree with Plaintiff that the ALJ

3   "effectively rejected Dr. Strobl's functional assessment" (Objections at 5), the ALJ articulated

4   clear and convincing reasons for rejecting Dr. Strobl's functional assessments, based upon

5   substantial evidence in the record.  The ALJ first noted that "Dr. Strobl failed to cite any

6   psychiatric findings in support of his diagnosis or GAF assessment" (A.R. at 19; *see also* A.R.

7   at 20).  *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992)

8   ("The ALJ need not accept an opinion of a physician--even a treating physician--if it is

9   conclusionary and brief and is unsupported by clinical findings.") (citing *Magallanes v.*

10  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ later explained that he discounted Dr.

11  Strobl's functional assessments because of Dr. Strobl's reliance on Plaintiff's subjective

12  complaints:

13      Dr. Strobl simply accepted at face value the claimant's subjective complaints.
        His mental status examination . . . distinguishes between impairment 'by history'
14      and impairment 'by interview.'  Dr. Strobl found impairment of concentration
        only 'by history' not 'by interview.'  In other words, he found impairment of
15      concentration only because the claimant reported it, not because he himself
        observed any evidence of it during [the] mental status exam.  In his functional
16      assessment, Dr. Strobl explicitly states that he is relying on the claimant's self
        report of impairment when he states that his assessment of her ability to sustain
17      concentration and persist in work tasks is based on the fact that 'she reports that
        this would be impossible.'  Dr. Strobl's mental status examination of the
18      claimant is not impressive for severity of mental impairment.  Behavior was
        'apprehensive' and eye contact was only 'fair.'  Affect was appropriate to
19      'depressed' and 'anxious' mood, but was otherwise entirely normal.
        Significantly, intelligence was average, speech and though[t] processes were
20      normal, and memory was intact.  For all her complaints about memory loss, Dr.
        Strobl found none on examination.
21
22  (A.R. at 29-30.)  Elsewhere in his opinion, the ALJ engaged in a thorough discussion of the

23  reasons for his finding "that subjective allegations [of Plaintiff] in this case are not fully

24  credible."  (A.R. at 31; *see also* A.R. at 22-25 (detailing why Plaintiff's "complaints are

25  inconsistent with the evidence"), 31-33 (detailing the ALJ's credibility findings).)  Plaintiff has

26  not objected to that portion of the ALJ's opinion.  Therefore, even if the ALJ "effectively

27  rejected" Dr. Strobl's opinions, he articulated a permissible basis for doing so: Dr. Strobl's

28  reliance upon Plaintiff's subjective complaints.  As the Ninth Circuit has stated:

        Credibility determinations are the province of the ALJ.  Because [Dr.]

1
2
3

McConochie's diagnoses were based on the self reporting of an unreliable person, the ALJ decided to accord them less weight.  This he could legitimately do; an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.

4   *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (citing *Flaten v. Sec'y of Health &*

5   *Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Magallanes*, 881 F.2d at 750).

6   Plaintiff also objects to the ALJ's treatment of the evidence provided by Dr. Ngoc M.

7   Pham, Plaintiff's treating physician until November 2002.  (Objections at 7-9.)  The ALJ gave

8   greater weight to the functional assessments provided by examining physician Dr. Frederick

9   W. Close.  Plaintiff concedes that "Dr. Close's opinion may be substantial evidence to remove

10  controlling weight normally awarded the opinion of a treating physician," and "[t]he ALJ could

11  cho[o]se Dr. Close's opinions over Dr. Pham's opinions."  (Objections at 9.)  However,

12  Plaintiff argues that the ALJ failed to adequately specify his reasons for choosing Dr. Close's

13  opinions over those of Dr. Pham.

14  The ALJ stated that the functional assessments provided by Dr. Pham, who "is not

15  board certified," "are inconsistent with the well-supported opinions of . . . Dr. Close, a board-

16  certified orthopedist whose report of examination is far more thorough and detailed than any

17  report by Dr. Pham.  Dr. Pham's assessments are also inconsistent with the well-supported

18  opinions of the state-agency physicians, Dr. Miya and Dr. Haaland.  Dr. Haaland is a board-

19  certified orthopedic surgeon."  (A.R. at 27.)  The ALJ noted that Dr. Pham's opinions "are in

20  the form of 'checklists' decried in *Batson v. Commissioner*, 359 F.3d 1190 (9th Cir. 2004)."[2]

21  (A.R. at 28.)  The ALJ then cited many specific findings which contradicted Dr. Pham's

22  assessments, including "Dr. Close's April 2, 2002, finding that [Plaintiff] had a normal gait;

23  above normal 5+/5 lower extremity strength; normal sensation; and grossly normal ranges of

24  motion to her lumbar spine, cervical spine, upper extremities, and lower extremities."  (A.R.

25  at 28.)  The ALJ also cited Dr. Close's opinion that after pregnancy,[3] Plaintiff "should be able

26  to lift/carry fifty pounds occasionally; lift/carry twenty-five pounds frequently; stand/walk for

27

28

[2]  *See Batson*, 359 F.3d at 1195 & n.3.

[3]  Plaintiff was seven months pregnant when she saw Dr. Close.  (A.R. at 17.)

1   eight hours of an eight hour day; sit for eight hours of an eight hour day; and perform frequent

2   bending, stooping, and crouching." (A.R. at 28.)  This opinion differed significantly from the

3   opinion of Dr. Pham.[4]   With respect to the ALJ's rejection of Dr. Pham's functional

4   assessments, the Court finds that the ALJ satisfied his duty to "make findings setting forth

5   specific, legitimate reasons for doing so that are based on substantial evidence in the record."

6   *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987) (citations and quotations omitted).

7       Finally, Plaintiff disputes the ALJ's characterization of the diagnosis provided by

8   Plaintiff's treating physician, Dr. Roy Kaplan.  The ALJ stated that "I do not give great weight

9   to [Dr. Kaplan's] functional assessments, because they are based primarily on his diagnosis of

10  fibromyalgia which is not a medically determinable impairment in this case." (A.R. at 27.)

11  Plaintiff does not contest the finding that fibromyalgia is not a medically determinable

12  impairment in her case; instead, she argues that "[t]here is no evidence that Dr. Kaplan's

13  opinions were based on a diagnosis of fibromyalgia." (Objections at 10.)  Contrary to

14  Plaintiff's assertion, there is substantial evidence indicating that Dr. Kaplan's opinions were

15  based upon his diagnosis of fibromyalgia. (A.R. at 258 ("FMS"), 259 ("Fibromyalgia

16  Syndrome"), 261 ("Fibromyalgia Syndrome"), 269 ("Fibromyalgia Syndrome"), 274

17  ("Fibromyalgia Syndrome").) With respect to Dr. Kaplan's diagnosis of fibromyalgia, the ALJ

18  found that the diagnosis was not a medically determinable impairment by setting forth specific,

19  legitimate reasons that were based on substantial evidence in the record. (A.R. at 23-25.)

20                          **CONCLUSION**

21      The Court concludes that the ALJ's decision that, during the time period at issue,

22  Plaintiff was not under a "disability" as defined in the Act and was not entitled to DIB or SSI

23  payments was free of legal error and supported by substantial evidence.

24  _____

25      [4]  The ALJ had previously summarized the Physical Capacities Evaluation form
    completed by Dr. Pham on November 18, 2002: "Without providing a diagnosis or citing
26  objective medical findings, Dr. Pham checked boxes to report the claimant to have a residual
    functional capacity to lift/carry ten pounds occasionally, lift/carry ten pounds frequently,
27  stand/walk for less than two hours of an eight hour day, and sit for an undefined amount of
    time with the need to alternate between sitting and standing every thirty minutes and undefined
28  limitations to pushing/pulling with all extremities . . . and having undefined environmental
    limitations . . . ." (A.R. at 18.)

**IT IS HEREBY ORDERED** that (1) the Court **ADOPTS** the Report and Recommendation (Doc. # 21) in its entirety and supplements the Report and Recommendation as set forth *supra*; (2) Plaintiff's Motion for Reversal and/or Remand (Doc. # 12) is **DENIED**; and (3) Defendant's Cross-Motion for Summary Judgment (Doc. # 14) is **GRANTED**.  The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff.

DATED:  March 19, 2007

**WILLIAM Q. HAYES**
United States District Judge